RALPH C. REESE et al., Claimants, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 27904.)

Court of Claims, July 22, 1947.

*Walter C. Garey* for claimants.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel), for defendant.

LAMBIASE, J. Claimants, who are husband and wife, at all times herein mentioned, were the owners of a parcel of land with a dwelling and other structures located thereon, consisting of 80 acres, more or less, situate in the town of Southport, county of Chemung, New York. At all times herein mentioned, Seeley Creek, a nonnavigable stream, flowed in a general northerly direction through claimants' land, dividing it into a parcel of 35 acres westerly and 45 acres easterly thereof. Twenty or 25 acres of the so-called westerly parcel were situated between the west bank of said creek and an abandoned railroad right of way, and the balance of said parcel was situated to the west of said railroad right of way. Claimants' dwelling was located on the easterly parcel aforesaid, fronting on the east side of New York State Highway No. 28 which highway crossed claimants' land in a general northerly and southerly direction. This highway crossed the afore-mentioned creek at a point about 700 feet south of the south boundary line of claimants' land.

In 1938, Seeley Creek, for the greater part of the distance that it flowed through claimants' land, consisted of two main

channels, an easterly and a westerly one, forming between them an island in the bed of said stream. In that year, the State of New York relocated and straightened Highway No. 28 as it ran through claimants' land. The east channel of said creek was filled in and closed up, and an embankment was built thereon which was used in the relocation of said highway at said point. A new main channel was dredged northerly and southerly, more or less straight, through the aforesaid island on claimants' land, and barriers and fill were placed at a point west of the new main channel, thereby blocking up a cove which went part way into the island, and thus facilitating the flow of the stream into the new main channel. A dyke was constructed by the State along the east bank of the creek on claimants' property at or near the location of a schoolhouse building, another structure standing on claimants' premises. All this work and these operations were done and performed by the State of New York with the permission, co-operation, and consent of the claimants. In fact, claimants conveyed to the County of Chemung, New York, without any cash consideration, except a possible nominal consideration of $1, a parcel of their land, amounting to 1.64 acres in order to effect the aforesaid highway and creek improvement.

It appears that this channelization of the creek, together with the other work done at that time by the State in the relocation of said highway, was of mutual benefit to the State and to claimants, for it provided a good channel for the creek, straightened out the highway, and furnished added protection from the seasonal high waters and flash floods of said creek for the highway as relocated and for claimants' land to the east thereof.

In 1940 and in 1941 the State built by private contract, but under its supervision, a new bridge across said Seeley Creek at the point hereinbefore mentioned where said highway crossed said stream. In the performance of this work, pursuant to surveys, plans, and specifications made and prepared by the State, its agents, servants, and employees, and by the State furnished to the contractor, said creek channel was deepened and widened north and south of said bridge, and a new bridge was built on a longer span than that of the former bridge which it replaced. In the course of this work performed as aforesaid and under the daily supervision of the State, its officers, and employees, the State, its agents, servants, and employees, and the contractor and his employees, without the claimants' permission and consent entered upon claimants' land, dredged the bed of said creek, and removed therefrom a quantity of gravel,

as the result of which the course and the channel of the creek were changed, and the flow of the stream was diverted from that which it had been pursuing prior thereto. Claimants became aware about the middle of August, 1942, that the bed of the creek had been thus dredged. Subsequent thereto and about the middle of January, 1943, and again about the middle of May of the same year, seasonal floods and high waters prevailed in said creek. The cumulative effect thereof was to destroy and wash away the afore-mentioned dyke near the schoolhouse and to erode and carry away an undetermined quantity of claimants' land at that point; to wash and carry away the barriers blocking the afore-mentioned cove west of the new main channel, and to inundate claimants' land to the north and west of the west bank of said creek, as the result of which the topsoil was eroded and washed away from 4.4 acres of claimants' land in that area, said eroded area being more particularly set forth and located on claimants' Exhibit 4 in evidence herein, which exhibit has heretofore, upon stipulation of counsel herein, been ordered by this court to be filed with the trial minutes hereof as a permanent part thereof. The area of claimants' land thus eroded as established herein and as shown on claimants' Exhibit 4 aforesaid is as follows: Beginning at a point designated at "I" on Exhibit 4; thence therefrom northerly along the line on said Exhibit 4 marked "Top Bank August 15, 1945" to a point where said line crosses claimants' north property line as shown on said Exhibit 4; thence southeasterly along said claimants' north property line and along the line shown on claimants' said Exhibit 4 marked "Top Bank August 15, 1945" following generally claimants' north property line to the point thereon marked "2"; thence in a straight line in a general southwesterly direction through the point on said Exhibit marked "Willows" to the aforesaid point "I", the place of beginning, said area described being 4.4 acres, and being northwest of the old creek channel running between said point "I" and "2" upon claimants' Exhibit 4 as testified to herein.

The extent of the damage was ascertained by claimants in May, 1943, and up to the time of the trial herein there had been no further noticeable damage to claimants' lands by reason of any of the matters alleged in the claim herein.

Subsequent to the ascertainment of the damage herein, claimants made an application to this court for permission to file the claim herein pursuant to subdivision 5 of section 10 of the Court of Claims Act (L. 1939, ch. 860), and pursuant to which appli-

cation. Honorable JAMES J. BARRETT, Presiding Judge of this court, on February 5, 1945, duly made an order herein wherein it is: " Ordered that the portion of the motion requesting permission to file the claim for damages alleged to have been sustained by taking and removing gravel from claimants' land, is denied, and that portion of said motion requesting permission to file a claim for alleged damages to claimants' land by the cumulative effect of several floods alleged to have resulted in the washing away of a large area of claimants' land, leaving said land exposed to further damage and alleged to have taken away the protection of a dyke erected for and in behalf of the claimants in lieu of the value of the land conveyed for highway purposes, is granted."

Pursuant to the terms of said order, claimants filed their claim herein, alleging, among other things, as follows:

" 10. This is a claim for damages to the claimants resulting from negligence of the agents of the State in changing the channel of said creek and diverting the flow of water causing large quantity of claimants' lands to be washed away and the dyke erected for the protection to their lands destroyed."

" 12. That the State Highway Department or its agents in changing said creek channel and diverting the flow of the water came upon the claimants' lands without the claimants' consent or permission.

" 13. That the acts of the agents of the State as aforesaid resulted in an appropriation of the claimants' property by the State of New York without compensation.

" 14. That the claimants have been damaged as follows:

(a) large quantity of land has been taken or washed or eroded away consisting of fertile and rich top soil, being the best part of the claimants' lands, leaving barren and rock sub-soil.

(b) the claimants' lands are exposed to further damage.

(c) the claimants have lost the protection of the dyke which was built to hold the channel of the creek in a straight course, and for the protection said dyke afforded, the claimants conveyed valuable lands for highway purposes without money consideration."

Upon the trial of this claim, the State contended that claimants had failed to make out a cause of action against it. However, in its brief submitted herein, the State admits that the claimants are entitled to a recovery, limited, however, to the sum of $400, basing claimants' right to recovery, however, upon grounds other than those urged by the claimants.

It is not claimed that Seeley Creek was ever made a public highway or that it is or ever was navigable. Neither is it denied that claimants, as riparian owners possessed of property on both sides of the creek adjoining and abutting thereon, have title to the bed of said stream. As such riparian owners, claimants, at all times herein mentioned, had an absolute right to have the waters on their property continued in their natural condition, free from any interference or obstruction. (*Little Falls Fibre Co.* v. *Ford & Son, Inc.,* 127 Misc. 834, mod. 223 App. Div. 559, affd. 249 N. Y. 495; affd. *sub nom. Ford & Son* v. *Little Falls Co.,* 280 U. S. 369; *Smith* v. *City of Rochester,* 92 N. Y. 463, 474; *Pixley* v. *Clark,* 35 N. Y. 520; *Hall* v. *Augsbury,* 46 N. Y. 622; *United Paper B. Co.* v. *Iroquois P. & P. Co.,* 226 N. Y. 38.) In the case last cited, the court discusses these rights at some length, and states that (p. 45) '' * * * riparian rights, are natural and inherent, and a part of the estate of each riparian owner.''

Claimants have set up several separate causes of action in their claim, although they are not, technically speaking, separately numbered and pleaded as such. In substance they constitute an alleged cause of action for negligence, another for trespass, and a third for an appropriation. We now consider these various causes of action.

(A) We are satisfied that the claimants have established the liability of the State herein upon the ground of negligence. We predicate that negligence upon the manner in which the bed of Seeley Creek located on claimants' land was dredged in 1940 and 1941. The rapidity of the current of said creek was increased, the flow of said creek was diverted from its previously established course causing the water of said creek to strike with force and violence against the aforesaid dyke on the east bank of the creek near the schoolhouse, destroying the said dyke together with an undetermined amount of claimants' land at that point, and inundating claimants' land west of said creek, washing away and destroying the topsoil from that part of claimants' land which has been hereinbefore particularly described.

It appears from the record that since 1926 when claimants purchased the farm up until the time of the change in the channel of the creek made in 1938, the flow of the stream had been well contained within its banks, upon which banks vegetation and willows grew. This same condition prevailed after the improvement effected in 1938 and up to and until the dredging done in 1940 and 1941. We are satisfied that it was this

latter dredging which was the proximate cause of and put in motion the chain of circumstances resulting in the damage hereinabove described.

Under the circumstances herein there is basis for a finding also that there was negligence on the part of the State after said dredging in 1940 and 1941 in failing to erect suitable structures or appliances to effectively control the flow of the water in the creek through claimants' property so as to avoid damage thereto. Then, too, the waters of said creek were diverted as hereinbefore described. The State is liable for all damages caused by such diversion. (*Vernum* v. *Wheeler*, 35 Hun 53; *Bellinger* v. *New York Central R. R.*, 23 N. Y. 42.)

(B) When the entry was made upon claimants' land, the bed of said creek dredged, and the flow thereof diverted as hereinbefore described, in 1940 and 1941, those acts, in our opinion, constituted a trespass, unless the State was then acting under legislative authority to appropriate the lands of the claimants for public purposes and to make proper compensation therefor. No such authority appears to have existed here. (*Litchfield* v. *Bond*, 186 N. Y. 66, 74.) In fact, the State does not claim herein that it had or was operating under any such authority with reference to claimants' land.

In a memorandum written by Presiding Judge JAMES J. BARRETT of this court upon the granting of the order of February 5, 1945, to which reference has hereinbefore been made, referring particularly to the dredging operations carried on in 1940 and in 1941 on claimants' land, he expressed himself on the same point as follows: "The trespass upon claimants' land was committed and the gravel was taken *by the State* in 1941." (Emphasis supplied.) Continuing in said memorandum, Presiding Judge BARRETT held that because of the lapse of time since the gravel had been taken, no permission could be granted claimants to file a claim for such taking; and no claim is being made herein for the value of such gravel.

We are of the opinion, however, that the trespass upon claimants' land in 1940 and 1941, occasioned by the afore-mentioned dredging, did not terminate with the taking of said gravel. On the contrary, said dredging operations and the failure of the State up to the time of the trial herein to correct the situation created a wrongful condition on claimants' land, and constituted a continuing trespass thereon which, under the evidence herein, still persisted at the time of the trial. (*Remington* v. *State of New York*, 116 App. Div. 522.) There was conferred thereby on the possessor of the land (the claimants)

an option to maintain a succession of actions based on the theory of continuing trespass. (1 Restatement, Torts, §§ 158–161; see § 161, comment b.) Here there was an unprivileged intrusion upon claimants' land, and it is that unprivileged intrusion which makes the actor " * * * liable for any harm caused to any legally protected interest which the possessor has in the land, as where the trespass causes harm to the physical condition of the land or blocks the access to or egress from the land. So too, he is liable for any harm to the possessor or to any third person or thing in the security of which the possessor has a legally protected interest, if such harm is caused by the actor's presence on the land, irrespective of whether it was caused by conduct which, were the actor not a trespasser, would have subjected him to liability." (1 Restatement, Torts, § 163, comment f.) It follows that the State, because of said dredging operations in 1940 and 1941, became an intruder and is liable for the consequences thereof regardless of whether the results could or should reasonably have been foreseen or whether the acts constituted negligence.

(C) Where real estate is actually invaded by superinduced additions of water, earth, sand, or other materials, or by having other artificial structures placed thereon so as to effectually destroy or impair its usefulness, it is a taking within the meaning of the Constitution for which compensation must be made. (*Pumpelly* v. *Green Bay Company,* 13 Wall. [U. S.] 166, 181; *Cartwright* v. *Southern Pac. Co.,* 206 F. 234.) The destruction of 4.4 acres of claimants' land was, to that extent, an appropriation of such property, for to destroy property is, in that sense, to appropriate it, and neither the State nor the nation can exclude the owners from the rights and benefits to which they were theretofore entitled without making compensation. (*Oswego & Syracuse R. R. Co.* v. *State of New York,* 226 N. Y. 351; *Higgins* v. *New York, L. E. & W. R. R. Co.,* 78 Hun 567; *Little Falls Fibre Co.* v. *Ford & Son, Inc.,* 127 Misc. 834, mod. 223 App. Div. 559, affd. 249 N. Y. 495, affd. *sub nom. Ford & Son* v. *Little Falls Co.,* 280 U. S. 369, *supra,* and cases therein cited; *Stevens* v. *State of New York,* 65 Misc. 240; *Weismantle* v. *State of New York,* 210 App. Div. 608, same case 229 App. Div. 824; *American Woolen Co.* v. *State of New York,* 195 App. Div. 698; *Rochford* v. *State of New York,* 153 Misc. 239; *Huey* v. *State of New York,* 170 Misc. 677.) We hold, therefore, that the destruction of the topsoil from 4.4 acres of claimants' land was to that extent an appropriation of said property; that claimants have been excluded from its possession and have

lost the right to its benefits to which they are entitled; and that the State is bound to make compensation therefor under the cases herein cited.

There remains but for us to consider the question of damages, and we discuss the rules thereof which are applicable to the various causes of action hereinbefore enumerated and contained in the claim. The loss sustained by claimants due to the destruction of the soil on 4.4 acres of their land is incapable of actual physical repair and, therefore, in its nature and of necessity is permanent, and a recovery on the basis of a permanent damage is permissible. (*Dietzel* v. *City of New York*, 218 N. Y. 270.) Accordingly, compensation should be made applying the usual measure of damages, to wit, the fair market value of the property actually taken, and also any damages resulting to the residue, including those which will be sustained by reason of the use to which the portion taken is to be put by those acquiring it and because of the severance, giving consideration in the computation of said consequential damage to any benefits received by the owners through the condemnation. (*Matter of Board of Water Supply of New York*, 277 N. Y. 452; *South Buffalo Ry. Co.* v. *Kirkover*, 176 N. Y. 301; *County of Erie* v. *Fridenberg*, 221 N. Y. 389; *Town of Fallsburgh* v. *Silverman*, 286 N. Y. 594; *Matter of City of New York* [*Exterior St.*], 285 N. Y. 455.) We are thus brought to the evidence of claimants on this point.

Claimants' real estate expert testified that claimants' land was worth $8,500 before the damage, and $6,500 thereafter. These figures indicate a damage of $2,000, which the witness ascribed to the following items in the following amounts: To five acres of land destroyed, $500; $1,500 to erecting proper appliances and structures to protect the remainder of said 20–25-acre parcel from further damage; or, in the alternative and in the event that such protective measures be not taken, to the value of the balance of said 20–25-acre parcel of said land, upon the assumption that under existing conditions, if nothing were done to prevent it, the balance of said land would also be eroded and destroyed in time. Upon cross-examination claimants' expert admitted, however, that none of the $2,000 damage was for loss caused to the rest of the parcel by reason of the severance from it of said five acres, and that accessibility to the balance of the parcel has not been lost or impaired by the destruction of the five acres.

There is some testimony by another witness in claimants' case to the point that the 20–25-acre parcel diminished by the

acreage destroyed, and with the constant threat of further inundation and destruction, would not be practicable for agricultural purposes, and that in its present condition, it is suitable only as a pasture. There is, however, no evidence in the case upon which we may make a finding as to the difference in value between the value of the remainder as pasture lands and its value before the damage as agricultural land; and there is insufficient evidence as to the diminution in rental value of the remainder of the parcel by reason of the damage. The State's real estate expert testified to a value of $6,500 before the damage and $6,100 after, with no consequential damages to the remainder, except that there is testimony in the record which we do not deem qualified to the effect that the remainder of the parcel could be protected from further damage by the expenditure of $250. The basic unit value of the land destroyed was, strangely enough, testified to by all concerned as being $100 per acre.

Under the rule of damages applicable to permanent damage and appropriation, claimants are entitled to any consequential damage resulting to the remainder by reason of the acts of the State. We are bound by the evidence, and if there has been consequential damage to claimants by reason of the destruction of the aforesaid acreage, it has not been proved and established herein, and we are constrained to so hold.

We take up now the averment of damage due to the alleged exposure of claimants' land to further erosion and destruction. When it is established that the interference with the rights of another are only temporary, casual, or intermittent, and there is no permanent use or appropriation of the property, and no established existing right has been destroyed, then there has been a mere trespass. (*American Woolen Co.* v. *State of New York,* 195 App. Div. 698, *supra; Frisbee & Stansfield K. Co., Inc.* v. *State of New York,* 189 App. Div. 341; *Dietzel* v. *City of New York,* 218 N. Y. 270, *supra.*) Except for the permanent damage already discussed herein, we are of the opinion that the trespass of the State as to the balance of the parcel may be considered temporary, casual, and intermittent, and as established by the evidence herein, capable of termination and correction. In such case the damages must, therefore, be limited to such as the claimants have sustained up to the time of the commencement of the action. Successive actions may be maintained until a removal is compelled and so long as the obstruction is maintained. (*Uline* v. *New York Central & H. R. R. R. Co.,* 101 N. Y. 98; *Dietzel* v. *City of New York, supra.*) But

the law will not proceed upon the assumption that a nuisance or an illegal conduct will continue forever. (*Uline* v. *New York Central & H. R. R. R. Co., supra; Dietzel* v. *City of New York, supra.*) The testimony, therefore, of claimants' real estate expert, ascribing damage for the eventual destruction of the balance of claimants' land in the 20–25-acre parcel is not the proper measure of damages to be applied herein, is speculative and conjectural, and, therefore, cannot be accepted. Furthermore, we consider his testimony as to the cost of protecting the balance of said parcel from further damage in the event that protective measures be not taken, as being the testimony of one not qualified and not authorized even though no objection was made upon the trial to his testimony. We, therefore, hold that as to the prospective damages to claimants' property, claimants have established no basis upon which we may make a finding of damages with reference thereto.

Insufficient proof has been adduced of any damage to any other part of claimants' land, particular attention being called to the fact that there is not enough evidence before us upon which we may make any finding with reference to the quantity of land washed away and destroyed from the east bank of said creek at the point of the location of the dyke near the schoolhouse building. Likewise, there is no evidence in the record of the cost of rebuilding said dyke on the east bank of the creek near the schoolhouse. There is insufficient proof of its value to claimants' property, even though claimants contend and it appears that they conveyed 1.64 acres of their land to the County of Chemung in consideration for the building of said dyke. We are unable, therefore, to make any findings of damages with reference to the items in this paragraph mentioned.

We are, therefore, in an accompanying decision making an award to claimants which we deem sufficient to compensate them for all the damage which we find to have been established.