**Frank W. KOHLASCH as Executor of the Last Will and Testament of Frank H. Kohlasch, Deceased and Echo Bay Boat Yard, Inc., Plaintiffs,**

v.

**NEW YORK STATE THRUWAY AUTHORITY, Defendant.**

**NEW YORK STATE THRUWAY AUTHORITY, Third-Party Plaintiff,**

v.

**CITY OF NEW ROCHELLE, Third-Party Defendant.**

No. 76 Civ. 4395.

United States District Court, S. D. New York

Oct. 17, 1978.

August C. Nimphius, Jr., White Plains, N. Y., for plaintiffs.

Dickerson, Reilly & Mullen, New York City, for defendant New York State Thru-

way Authority; John H. Reilly, Jr., John W. Burke, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, owner and lessee respectively of real property in the City of New Rochelle, seek damages from the defendant New York State Thruway Authority ("Authority") for injuries resulting from the discharge onto plaintiffs' property of oil, sand, debris and chemicals from a drain constructed by the defendant on adjacent lands. In addition to damages, plaintiffs seek permanent injunctive relief against a continuation of such conduct.

Plaintiffs allege various causes of action: [1]

(1) The defendant's conduct constitutes a taking of property without due process and just compensation. Jurisdiction is claimed under the federal question provision of 28 U.S.C., section 1331, and the civil rights provision of 28 U.S.C., section 1343(3).

(2) The navigable channel across plaintiffs' property has become shoal and obstructed, thereby impairing their navigational rights. Admiralty jurisdiction under 28 U.S.C., section 1333, is alleged.

(3) A bulkhead on plaintiffs' land is being undermined and destroyed as a result of the force of the discharge from the Authority's drain. Although no specific jurisdictional base is alleged, plaintiffs rely generally on the pendent jurisdiction of the Court, in addition to the specific provisions noted above.

(4) The adjacent waters of the Long Island Sound, the waters of the channel across plaintiffs' land, and the soil beneath the channel are being polluted and fouled by the materials discharged from the drain.

(5) The Authority, although required to obtain a permit from the New York State Department of Environmental Conservation for the construction and maintenance of sewers, drains and the like that discharge into navigable waterways, has maliciously and intentionally refused to do so.[2]

The Authority moves pursuant to Rules 12(h)(2) and (3) of the Federal Rules of Civil Procedure to dismiss each and every cause of action on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## I

Defendant's jurisdictional objection to plaintiffs' claim of an unconstitutional taking rests on the Eleventh Amendment bar to suits against the State. Under state law, exclusive jurisdiction of claims against the Thruway Authority lies in the New York Court of Claims;[3] since the state courts, other than the Court of Claims, would have no jurisdiction in this action, defendant contends that the federal courts "by analogy" also lack jurisdiction. But whether or not the Authority is an alter ego of the State for Eleventh Amendment purposes is a question of federal not state law.[4] Thus defendant's citation of *Zeidner v. Wulforst*,[5] to support the proposition that the Authority is immune from suit, is misplaced. Unlike the instant action, *Zeidner* was a diversity suit; the doctrine of *Erie R. Co. v. Tompkins*[6] required

1. The complaint consists of ten counts, alleging the same five causes of action for each plaintiff.

2. In addition, plaintiffs originally asserted a cause of action under the Federal Water Pollution Control Act, 33 U.S.C. § 1365, but this cause was voluntarily withdrawn by plaintiffs because they had failed to comply with the notice requirements of the Act, *id.* § 1365(b)(1)(A).

3. N.Y.Pub.Auth.Law § 361–b (McKinney 1970).

4. *Matherson v. Long Island State Park Commission*, 442 F.2d 566, 568 (2d Cir. 1971); *Harris v. Pennsylvania Turnpike Commission*, 410 F.2d 1332, 1333–34 n. 1 (3d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970); *Krisel v. Duran*, 258 F.Supp. 845, 849 (S.D.N.Y.1966), *aff'd*, 386 F.2d 179 (2d Cir. 1967).

5. 197 F.Supp. 23 (E.D.N.Y.1961).

6. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

the court to accord the Authority the same limited immunity from suit it would receive under state law. *Erie*, not the Eleventh Amendment, compelled dismissal in *Zeidner*; in fact, the *Zeidner* court specifically held that the Authority was not an alter ego of the State and thus the Eleventh Amendment was no bar.[7]

We agree with the court in *Zeidner* that the Thruway Authority is not cloaked with sovereign immunity. The Authority has the power to sue and be sued, to hold and dispose of property, and to borrow money and issue negotiable notes and bonds.[8] Particularly significant is the fact that the Authority, not the State, is liable on all awards and judgments arising from claims for the value of real property taken for thruway purposes.[9] There being no immunity, defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

▮▮ Defendant's contention that plaintiffs have failed to state a claim is more persuasive. To support a claim of a taking in violation of the Fourteenth Amendment, plaintiffs must show three elements: (1) a property interest, (2) that has been taken under color of state law, (3) without due process or just compensation. For the purposes of this motion, plaintiffs' allegations

of ownership of the described property and of physical intrusion and resultant damage must be deemed true.[10] But the gravamen of the constitutional violation is the State's failure to provide due process and just compensation and, on this element, plaintiffs' complaint founders. They admittedly have made no attempt to avail themselves of the adequate state procedures for compensation following a *de facto* appropriation.[11]

Our Court of Appeals has recently suggested that the bypassing of an adequate state remedy renders the complaint subject to dismissal for failure to state a constitutional violation:

> It has been suggested in a somewhat analogous context by then Circuit Judge Stevens that if such a remedy does exist and has not been resorted to, no constitutional deprivation can be claimed. See *Bonner v. Coughlin*, 517 F.2d 1311, 1319–20 (7th Cir. 1975). Although a subsequently convened en banc court in that case rejected this approach in the context of the prisoner's suit before it, 545 F.2d 565 (7th Cir. 1976) (en banc), this theory would seem to apply with greater force to the more traditional type of "taking" of property by the State that is alleged here.[12]

---

7. 197 F.Supp. at 25. The court reasoned that Eleventh Amendment concerns were not implicated in a suit against the Authority for the tortious acts of its agents because the Authority, not the State, was required to pay any judgments rendered against it. N.Y.Pub.Auth.Law § 361–b (McKinney 1970); *see Matherson v. Long Island State Park Commission*, 442 F.2d 566, 568 (2d Cir. 1971); *Prendergast v. Long Island State Park Commission*, 330 F.Supp. 438, 440 (E.D.N.Y.1970); *Krisel v. Duran*, 258 F.Supp. 845, 849 (S.D.N.Y.1966), *aff'd*, 386 F.2d 179 (2d Cir. 1967).

8. N.Y.Pub.Auth.Law § 354 (McKinney 1970).

9. *Id.* § 358(2).

10. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Drachman v. Harvey*, 453 F.2d 722, 724 (2d Cir. 1971); *Murray v. City of Milford*, 380 F.2d 468, 470 (2d Cir. 1967).

11. *See* N.Y.Ct.Cl.Act § 9(2) (McKinney Supp. 1977–1978); N.Y.Pub.Auth.Law § 358(2)

(McKinney 1970); *Charles v. Diamond*, 47 A.D.2d 426, 366 N.Y.S.2d 921 (4th Dep't 1975), *aff'd on other grounds*, 41 N.Y.2d 318, 392 N.Y.S.2d 594, 360 N.E.2d 1295 (1977) (jurisdiction of Court of Claims extends to claims of *de facto* appropriation).

Most federal cases raising claims of unconstitutional deprivation of property by the State are presented in the context of an appeal from a state court judgment. *E. g., Penn Central Transp. Co. v. New York City*, —— U.S. ——, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). *But cf. Simmons v. Wetherell*, 472 F.2d 509 (2d Cir. 1973) (Court of Appeals noted that complaint appeared to state a claim of unconstitutional taking, but abstained from deciding the issue because the question of title to the land was the subject of a pending state proceeding).

12. *O'Grady v. City of Montpelier*, 573 F.2d 747, 751 (2d Cir. 1978); *accord, Elterich v. City of Sea Isle City*, 477 F.2d 289, 291 (3d Cir. 1973); *Kao v. Red Lion Municipal Authority*, 381 F.Supp. 1163, 1166 (M.D.Pa.1974).

This position is supported by Supreme Court decisions which have held that the Constitution does not require a hearing or compensation in advance of appropriation, but only that "adequate provision for obtaining compensation" exist prior to the seizure.[13] For example, in cases of physical seizure of property by the federal government without the institution of condemnation proceedings, the Tucker Act[14] has been held to constitute the "adequate provision" required by the Fifth Amendment.[15]

Similarly, New York law contains "adequate provision" for compensation for the taking alleged in this case. "Although the condemning authority is generally not liable to a condemnee until title to the property is officially taken," New York recognizes that a compensable *de facto* taking may be established by evidence of "physical entry by the condemnor, a physical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property."[16] Claims similar to those pressed by plaintiffs have long been recognized by the New York courts. For example, the New York Court of Claims has held that "where

real estate is actually invaded by superinduced additions of water, earth, sand, or other materials . . . so as to effectually destroy or impair its usefulness, it is a taking within the meaning of the Constitution for which compensation must be made."[17]

Plaintiffs can sue the Thruway Authority in the New York Court of Claims where they would be entitled to "the fair market value of the property actually taken, and also any damages resulting to the residue."[18] Such a judgment would of necessity take into account the damages to date and any future damages by reason of the continuation of the alleged wrongful conduct. Plaintiffs, however, assert that the state procedures are inadequate because the Court of Claims lacks equitable powers. But the equitable relief requested of this Court is an injunction directing the Authority to remove the drain or commence condemnation proceedings. The additional effort required of plaintiffs to commence the Court of Claims proceeding for compensation themselves is of no constitutional moment.[19] No further assertions of inadequacy of the state remedy having been made, plaintiffs' claim must fail.

---

**13.** *Cherokee Nation v. Southern Kansas Ry.*, 135 U.S. 641, 659, 10 S.Ct. 965, 34 L.Ed. 295 (1890); *see Bragg v. Weaver*, 251 U.S. 57, 62, 40 S.Ct. 62, 64 L.Ed. 135 (1919); *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 175, 20 L.Ed. 557 (1871).

**14.** 28 U.S.C. § 1346(a)(2).

**15.** *Hurley v. Kincaid*, 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637 (1932) (Brandeis, J.); *accord, United States v. Dow*, 357 U.S. 17, 21, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958); *Stringer v. United States*, 471 F.2d 381 (5th Cir. 1973).

**16.** *City of Buffalo v. J. W. Clement Co.*, 28 N.Y.2d 241, 253, 255, 321 N.Y.S.2d 345, 355, 357, 269 N.E.2d 895, 902, 903 (1971).

**17.** *Reese v. State*, 190 Misc. 316, 72 N.Y.S.2d 209, 216 (Ct.Cl.1947); *see Rose v. State*, 24 N.Y.2d 80, 85, 298 N.Y.S.2d 968, 973–74, 246 N.E.2d 735, 738 (1969); *Hylan Flying Serv., Inc. v. State*, 54 A.D.2d 278, 388 N.Y.S.2d 444 (4th Dep't 1976); *cf. Trippe v. Port of New York Authority*, 14 N.Y.2d 119, 249 N.Y.S.2d 409, 198 N.E.2d 585 (1964) (flight pattern from

Kennedy Airport over plaintiffs' homes interfered with the quiet use and enjoyment of their property, constituting a taking).

**18.** *Reese v. State*, 190 Misc. 316, 72 N.Y.S.2d 209, 216 (Ct.Cl.1947); *see* N.Y.Ct.Cl.Act § 9(2) (McKinney Supp. 1977–1978); N.Y.Pub. Auth.Law § 358(2) (McKinney 1970); *Rose v. State*, 24 N.Y.2d 80, 87, 298 N.Y.S.2d 968, 975, 246 N.E.2d 735, 739 (1969). Alternatively, they may cast their complaint in tort by alleging that defendant's conduct constitutes a continuing trespass. *Reese v. State*, 72 N.Y.S.2d at 215; *see* N.Y.Ct.Cl.Act § 9(2) (McKinney Supp. 1977–1978); N.Y.Pub.Auth.Law § 361–b (McKinney 1970); *Trippe v. Port of New York Authority*, 14 N.Y.2d 119, 128, 249 N.Y.S.2d 409, 415, 198 N.E.2d 585, 588–589 (1964) (Fuld, J., concurring) (plaintiffs entitled to damages for anticipated future injuries measured by the diminution in market value of the property).

**19.** *See Hurley v. Kincaid*, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637 (1932) (Brandeis, J.).

## II

■ Defendant, relying on *Executive Jet Aviation v. City of Cleveland*,[20] contends that plaintiffs have improperly invoked admiralty jurisdiction over their claim of impaired navigational rights. Under *Executive Jet*, admiralty jurisdiction exists in cases of maritime torts if the wrong "occurs" or is "located" on or over navigable waters *and* if the "wrong bear a significant relationship to traditional maritime activity."[21] Plaintiffs' allegations meet this description. The complaint states that plaintiffs "have rights to navigate vessels in a dredged area over and across part of the lands" described; "the tide ebbs and floods" in the dredged area which connects "directly with the waters of Long Island Sound"; and the discharge from the Authority's drain is causing the waters "to become shoal and obstructed and unfit for navigation."

Defendant counters with two arguments: first, that this case involves injury to riparian rights, not maritime interests; second, that this Court should look to the defendant's activity, rather than the plaintiffs' injury, in determining whether a maritime connection exists. Similar contentions were raised in *Sound Marine & Machine Corp. v. Westchester County*[22] and rejected by the Second Circuit, which held that a suit by a riparian owner to recover damages for impaired ingress and egress in a navigable channel owing to the defendant's construction of a sewer pipe in the channel was cognizable in admiralty. Although the right to use the waterway stemmed from ownership of riparian property, the Court found that the character of the right was essentially maritime.[23] There, as here, plaintiffs used their property for the repair and storage of boats. In addition, the Court held that the controlling factor in determining whether admiralty jurisdiction exists is not "the source of the injury . . . but the nature and character of the thing injured."[24] Although it was decided prior to *Executive Jet, Sound Marine* is consistent with that decision and with the developing case law.[25] Defendant's motion to dismiss the admiralty claims is denied.

## III

■ Plaintiffs do not specify the jurisdictional base for the remaining causes of action, relying instead on the provisions previously cited and on this Court's pendent jurisdiction. But to the extent only state law claims are asserted, they must be dismissed. In determining a cause of action based solely on New York law, this Court sits as another court of the State and must accord the Authority the same limited immunity that a state court would.[26]

■ Plaintiffs' assertion that the force of the drain discharge is eroding the soil around a bulkhead and causing it to collapse raises no federal claim, for the rule is clear that admiralty jurisdiction does not reach injuries to a structure attached to

---

**20.** 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

**21.** *Id.* at 268, 93 S.Ct. at 504.

**22.** 100 F.2d 360 (2d Cir. 1938), *cert. denied*, 306 U.S. 642, 59 S.Ct. 582, 83 L.Ed. 1042 (1939).

**23.** *Id.* at 362.

**24.** *Id.*

**25.** *In re Motor Ship Pacific Carrier*, 489 F.2d 152 (5th Cir. 1974) (smoke emitted by paper mill); *Oppen v. Aetna Ins. Co.*, 485 F.2d 252 (9th Cir. 1973) (oil spill); *see Parsell v. Shell Oil Co.*, 421 F.Supp. 1275 (D.Conn.1976) (oil spill); *Potomac River Ass'n, Inc. v. Lundeberg Maryland Seamanship School, Inc.*, 402 F.Supp. 344 (D.Md.1975) (injury to commercial fishing from dredge and fill operations); *State of Maryland, Dep't of Natural Resources v. Amerada Hess Corp.*, 350 F.Supp. 1060 (D.Md.1972) (rupture of oil pipe on land); *Maier v. Publicker Commercial Alcohol Co.*, 62 F.Supp. 161 (E.D.Pa. 1945), *aff'd*, 154 F.2d 1020 (3d Cir. 1946) (industrial waste damaging salvaged vessel and clogging channel).

**26.** *Harris v. Pennsylvania Turnpike Commission*, 410 F.2d 1332, 1334–35 (3d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970); *Zeidner v. Wulforst*, 197 F.Supp. 23 (E.D.N.Y.1961); *see* text accompanying notes 3–7 *supra*.

land.[27] Plaintiffs' remedy lies, therefore, in the state courts. In contrast, plaintiffs' claim of pollution damage is cognizable in admiralty to the extent that the injury is to maritime interests rather than to aesthetic or ecological concerns.[28] Polluted waters may impede navigation through the channel or damage the boats stored at plaintiffs' boat yard. Though the complaint does not specify the interests invaded by the pollution, the Court will assume that admiralty jurisdiction exists in light of the maritime character of the use of plaintiffs' property.

Plaintiffs' final claim alleges "on information and belief" that the Authority must obtain a permit from the State Department of Environmental Conservation ("Department") prior to discharging refuse into navigable waters. Article 17 of the New York Environmental Conservation Law[29] prohibits any "person," which is defined to include public corporations,[30] from discharging "organic or inorganic matter" into the State's waters in contravention of water quality standards set by the Department[31] in the absence of a permit.[32] Assuming for present purposes that this statute imposes a duty on the Thruway Authority to obtain a permit for its drain, the question remains whether the statute vests a right of action for damages in private persons, like plaintiffs, who claim to be injured by the failure to acquire a permit.

Such a private right is specifically negated by section 17–1103 which states in part:

> The bases for proceedings or actions resulting from the violations of the prohibitions contained in titles 1 to 11, inclusive, and title 19 of this article inure solely to and are for the benefit of the people generally of the state of New York, and it is not intended to in any way create new, or enlarge existing rights of riparian owners or others.[33]

Whatever existing rights or remedies plaintiffs may have are preserved,[34] but the statute creates no new rights. The "existing" and sole right plaintiffs have against the Thruway Authority is that provided by the Public Authorities Law[35]—a cause of action in the New York Court of Claims predicated on the tortious acts of the Authority in creating the alleged nuisance. To the extent plaintiffs seek an injunction directing the Authority to obtain a permit, they are relegated to an Article 78 proceeding in state court.[36] This being a wholly state cause of action, this Court must respect the limits imposed by the State on the rights of its citizens to hold a public authority accountable to its laws. The remedies available to private litigants are precise and narrow—an action for damages in the Court of Claims or an Article 78 mandamus proceeding in state supreme court.[37] It is

**27.** *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113 (5th Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *United States v. Matson Nav. Co.*, 201 F.2d 610 (9th Cir. 1953); *Hooper v. United States*, 331 F.Supp. 1056 (D.Conn.1971); *The Poughkeepsie*, 162 F. 494 (S.D.N.Y.), *aff'd*, 212 U.S. 558, 29 S.Ct. 687, 53 L.Ed. 651 (1908).

**28.** *See Parsell v. Shell Oil Co.*, 421 F.Supp. 1275 (D.Conn.1976); *Potomac River Ass'n, Inc. v. Lundeberg Maryland Seamanship School, Inc.*, 402 F.Supp. 344 (D.Md.1975); *State of Maryland, Dep't of Natural Resources v. Amerada Hess Corp.*, 350 F.Supp. 1060 (D.Md.1972); *Maier v. Publicker Commercial Alcohol Co.*, 62 F.Supp. 161 (E.D.Pa.1945), *aff'd*, 154 F.2d 1020 (3d Cir. 1946).

**29.** N.Y.Envir.Conserv.Law §§ 17–0101 to 1907 (McKinney 1973 & Supp. 1977–78).

**30.** *Id.* § 17–0105(1).

**31.** *Id.* §§ 17–0501 to 0511.

**32.** *Id.* § 17–0701.

**33.** *Id.* § 17–1103 (McKinney 1973).

**34.** *Id.* § 17–1101.

**35.** N.Y.Pub.Auth.Law § 361–b (McKinney 1970).

**36.** N.Y.Civ.Prac.Law §§ 7801–7806 (McKinney 1963 & Supp. 1977–1978); *see* N.Y.Envir.Conserv.Law § 71–1715 (McKinney 1973).

**37.** By contrast, the enforcement mechanisms available to the Department of Environmental Conservation under the statute are broad. Civil penalties, recoverable by the Commissioner or the Attorney General, are imposed on violators. N.Y.Envir.Conserv.Law §§ 71–1707, –1929 (McKinney 1973 & Supp. 1977–1978).

not this Court's function to expand these remedies.

## CONCLUSION

Plaintiffs' first, third, fifth, sixth, eighth and tenth counts are hereby dismissed. Because the remaining counts are premised on this Court's admiralty jurisdiction, plaintiffs' demand for a jury trial must be stricken.

In addition, the Attorney General may sue civilly for an injunction, *id.* § 71–1931, or may prosecute violators in a criminal proceeding, *id.* § 71–1933.