**Abdul Muhammad SAMAAD, et al., Plaintiffs,**

**v.**

**CITY OF DALLAS, et al., Defendants.**

**No. CA 3–88–0935–T.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 11, 1990.

---

**2.** *Carpenter v. Illinois Central,* 524 F.Supp. 249, 254 (M.D.La.1981), quoting *Calhoun v. Calhoun,* 482 F.Supp. 347, 350 (E.D.Okla.1978).

Neil Cogan, Dallas, Tex., for plaintiffs.

Thomas P. Brandt and Paul Pearce, Jr., Asst. City Attys., Law Offices of Arlen D. Bynum, Arlen Bynum, Russell Smith and Marston Alexander, John Albach and George A. Otstott and Martin Randa Merritt, Otstott & Guerrero, Dallas, Tex., for defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

MALONEY, District Judge.

This action arises out of an automobile race held at Fair Park in Dallas, Texas from July 5–8, 1984. Plaintiffs are persons who reside in neighborhoods adjacent to Fair Park.[1] They brought this action against the City of Dallas and other parties who acted in conjunction with it in allowing the automobile race to be held. Plaintiffs allege that the race in Fair Park caused extraordinary noise thereby depriving them of their ability to make normal use and enjoyment of their homes and their lives.

Plaintiffs claim that the failure of Defendants City of Dallas and State Fair of Texas to notify Plaintiffs about the use of Fair Park for automobile racing violated the Privilege and Immunities and Due Process Clauses of the Fourteenth Amendment. Additionally, Plaintiffs claim that the holding of the race constituted a taking of property and because it was for a private use and without just compensation, it violated the Fifth Amendment, as incorporated by the Fourteenth Amendment. Plaintiffs bring their constitutional claims pursuant to 42 U.S.C. § 1983. Additionally, Plaintiffs allege various pendent state law claims.

On May 8, 1989, Defendants State Fair of Texas and Larry Waldrop filed their Motion to Dismiss and in the Alternative Motion for Summary Judgment. On May 10, 1989, Defendant City of Dallas filed its Motion for Summary Judgment. As its response, Plaintiffs' adopt their response which they filed in *Pierce, et al. v. City of Dallas*, No. CA3–88–1800–T[2] on June 16, 1989, as their response in this case. Defendant City of Dallas filed its reply on July 26, 1989.

Summary judgment should only be entered where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

---

1. Fair Park is a public park within the City of Dallas. It presently consists of 277 acres. Dallas Historical Society, *A Guide to Fair Park.*
    Throughout its history, Fair Park has been used for a variety of activities. In 1886, the Dallas State Fair and Exposition, now the Texas State Fair and Dallas Exposition, was first held on property now known as Fair Park. The State Fair is now an annual event. Horse racing, harness racing and fireworks have been a part of the State Fair.
    Fair Park is also the site of a football stadium. In 1936, the Texas Centennial was held in Fair Park, and many of the buildings that exist in Fair Park today were built for that event. The stadium, the Cotton Bowl, has hosted many major entertainment and sporting events, including major football games, rodeos, fireworks displays and concerts.
    The first automobile race took place in Fair Park in 1901, a 100–mile automobile race was held at Fair Park in 1905. Demolition derbies and motorcycle races have also been held at Fair Park. *See* Affidavit of Nancy Wiley, Defendants Exhibit D to Defendants' response to Plaintiffs' motion for partial summary judgment filed January 17, 1989 in *Pierce, et al. v. City of Dallas, et al.*, CA3–88–1800–3, attached hereto as Appendix.

2. The *Pierce* case involves similar claims surrounding a race which took place April 29, through May 1, 1988.

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510.

Plaintiffs contend that they have alleged the following three claims under 42 U.S.C. § 1983: (1) a claim for a taking of Plaintiffs' property without just compensation; (2) a claim that Plaintiffs' property was taken without procedural due process; and, (3) a claim for a taking of Plaintiffs' property for a private use.

In order to sustain a cause of action under section 1983, Plaintiffs must show that the conduct complained of was committed under color of state law and that this conduct deprived Plaintiffs of a constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Because the Court finds that Plaintiffs have failed to allege a deprivation of a constitutional right with respect all of their claims, the Court must grant summary judgment against Plaintiffs as a matter of law.

■ Before the Court addresses Plaintiffs' claims for a taking of their property, the Court will address Plaintiffs' argument that summary judgment should be denied because they have not had an opportunity to present all the facts. Plaintiffs assert that they have served a set of interrogatories upon Defendant City of Dallas, which interrogatories seek information about unequal enforcement of the law by the City of Dallas. The Court notes, however, that in the present case Plaintiffs have not alleged any facts which would state an equal protection claim,[3] and Plaintiffs so admit in their response. Therefore, the discovery

sought by Plaintiffs would be irrelevant to the claims Plaintiffs contend they have alleged in the present case. Accordingly, summary judgment will not be denied on the basis that Plaintiffs have not obtained discovery on the issue of unequal enforcement of the law.

■ To state a claim for a taking pursuant to the Fourteenth Amendment, Plaintiffs must show (1) a taking of a property interest (2) under color of state law (3) without due process or just compensation. *Kohlasch v. New York State Thruway Authority*, 460 F.Supp. 956, 960 (S.D.N.Y. 1978). Accordingly, in order to be entitled to due process or just compensation, Plaintiffs must first have alleged that they had a property interest taken from them.

■ Plaintiffs have failed to allege facts which rise to the level of a taking of a property interest. In their complaint, Plaintiffs allege that "[b]ecause of the extraordinary noise caused by the racing, Plaintiffs ... were unable to make normal use, and were deprived of the enjoyment, of their lives and homes." Plaintiffs have not alleged any decrease in value of their homes; Plaintiffs allege that they were deprived of the use and enjoyment of their homes. Plaintiffs contend that they have alleged a temporary, partial taking of their property. Citing *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) and *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). Plaintiffs contend that the Supreme Court has construed the Takings Clause to require that the government pay just compensation when it takes property temporarily, as well as permanently, and when it takes property partially and nondestructively, as well as totally and destructively. The Court concludes that these cases are distinguishable and do not require the result urged by Plaintiffs, as those cases involved land-use regulations which were so extensive that the Supreme

---

3. The Court notes that in the *Pierce* case Plaintiffs attempted to allege facts which would state a claim for violation of their equal protection

rights. That is not the case in the present action.

Court held that the regulations amounted to a taking.

■ The Court does note that a temporary taking requires compensation, just as does a permanent taking. *See First English Evangelical*, 482 U.S. at 318, 107 S.Ct. at 2387; *Kimball Laundry Co. v. United States*, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949); *United States v. Petty Motor Co.*, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946). However, these cases involve situations where the landowner is denied all use of his property. In the present case, summary judgment evidence shows that Plaintiffs were not denied all use of their property during the race.

Additionally, Courts have held that invasion of sound and shock waves interfering with the enjoyment of property does not constitute a taking, even when there is a substantial diminution in the value of the property affected. *Avery v. United States*, 165 Ct.Cl. 357, 330 F.2d 640, 645 (1964); *Batten v. United States*, 306 F.2d 580 (10th Cir.1962). Plaintiffs argue that the Supreme Court has recognized that certain levels of noise constitute a taking, citing *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). The Court disagrees; in *Causby*, an unconstitutional taking of property occurred because there was a physical invasion of the airspace superadjacent to the landowner's property. However, other cases have found a taking without actual physical invasion of the surface of the land. *See, e.g., Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (a taking of the subjacent property). Without some physical invasion, this Court finds no authority holding that the government is liable for noise. *Branning v. United States*, 228 Ct.Cl. 240, 654 F.2d 88, 99 (Ct. Cl.1981). No physical invasion of Plaintiffs' property occurred in the instant case.

The Ninth Circuit has held that noise generated from a city-owned automobile racetrack did not rise to the level of an unconstitutional taking. *Citizen's Ass'n of Portland v. Int'l Raceways, Inc.*, 833 F.2d 760 (9th Cir.1987). In that case, the plaintiffs were also persons who resided in neighborhoods near the racetrack. The Court reasoned that because the case did not involve land-use regulations so extensive as to deprive the plaintiffs of the use of their property, and because racing at the racetrack was periodic, no taking had occurred. *Id.* at 762. The court noted that "almost no racing occurs for six months out of each year." *Id.*

In the case at bar, the race was held over a three day period; no other racing occurred in this area until four years later.[4] Any loss of the quiet use and enjoyment of Plaintiffs' homes was so temporary that it could not amount to a taking for which Plaintiffs are entitled to compensation. Plaintiffs were not deprived of all economically viable use of their property. *Citizen's*, 833 F.2d at 762; *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

Plaintiffs attempt to distinguish *Citizen's* because it arose on a motion to dismiss and not a motion for summary judgment. Plaintiffs contend that they have submitted summary judgment proof of their allegations. However, the Court notes that if what Plaintiffs have alleged does not amount to a taking, it does not matter whether they can prove it or not. If Plaintiffs' allegations do not rise to the level of a taking, then they cannot establish an element of each of their three claims, and summary judgment must be granted against them as a matter of law.

As the Court has already noted, Plaintiffs complaint does not allege a diminution in the value of their property. Additionally, because Plaintiffs concede that any taking was temporary, they cannot also argue that their homes permanently depreciated in value. However, even accepting this contention, the Court finds that Plaintiffs' summary judgment evidence cannot properly be considered to establish that the race depreciated the value of their homes and

---

**4.** The race in *Pierce, et al. v. City of Dallas, et al., No. CA3–88–1800–T*, occurred April 29, through

May 1, 1988.

damaged their investment expectations in their homes, as Plaintiffs contend. Plaintiffs affidavits and other summary judgment material, which simply assert a loss in value of their homes, are merely conclusory; and therefore, they are insufficient to defeat a motion for summary judgment. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.), *reh'g denied*, 762 F.2d 1004 (1985).

■ Plaintiffs contend that even if the Court finds that Plaintiffs' alleged facts do not constitute a taking, it would be dispositive of only Plaintiffs' taking without just compensation claim, and no other. The Court concludes that because Plaintiffs have not alleged a taking, no genuine issue of material fact exists with respect to an element of Plaintiffs' claim for taking of property without procedural due process and their claim for taking of property for a private use, as well as their claim for taking without just compensation.

■ With respect to the procedural due process claim, the Court has already noted that before Plaintiffs can establish a claim for denial of due process, Plaintiffs must allege that they have been deprived of a property interest. Plaintiffs argue, and the Court agrees, that before a person may be denied a legitimate claim of entitlement, that person is entitled to procedural due process. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs contend that their legitimate claim of entitlement is to be free of the kind of noise that would deprive them of any normal or reasonable use of their homes and to determine the use of public property, i.e., Fair Park and the streets. This interest is the same as the interest they claim was taken from them with respect to their just compensation claim. Additionally, the Court has already noted that the courts have not recognized a right to be free from noise. Plaintiffs procedural due process claim must fall.

Plaintiffs argue that their fourth claim, that Defendants took Plaintiffs' property for a private use rather than for a public use in violation of the Fifth Amendment, is not barred by a finding that Plaintiffs' have not alleged a taking. The Supreme Court has held that it is a violation of the Takings Clause if one person's property is taken for the benefit of another private person without a justifying public purpose, even though compensation be paid. *Thompson v. Consolidated Gas Co.*, 300 U.S. 55, 80, 57 S.Ct. 364, 376, 81 L.Ed. 510 (1937). Therefore, Plaintiffs' fourth claim is but a subset of the traditional taking claim. Accordingly, this claim also falls since Plaintiffs have failed to allege a taking.

## CONCLUSION

The Court, having considered Defendants' motion for summary judgment, Plaintiffs' response thereto, and supporting affidavits and accompanying exhibits, finds that Plaintiffs fail to support a cause of action pursuant to 42 U.S.C. § 1983 as no reasonable jury could return a verdict for Plaintiffs. As the Court finds that Plaintiffs' § 1983 action should be dismissed, the Court is of the opinion that it should dismiss Plaintiffs' pendent state law claims as well. *Daniels·v. All Steel Equipment, Inc.*, 590 F.2d 111 (5th Cir.1979).

It is therefore ORDERED Defendants' motions for summary judgment are granted and that Plaintiffs' complaint with respect to 42 U.S.C. § 1983 is dismissed with prejudice.

It is FURTHER ORDERED that Plaintiffs' complaint with respect to pendent state law causes of action is dismissed without prejudice.

## APPENDIX

No. CA3–84–1501–D

AFFIDAVIT

STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, the undersigned authority, on the date set forth below, came Nancy Wiley, in person and on her oath stated: "My name is Nancy Wiley and I am a resident of Dallas County, Texas. I am qualified and competent to make this affidavit. I am more than 21 years of age. I

am presently employed by the State Fair of Texas and hold the position of Director of Communications and have been so employed for the past 17 years. I am a graduate of Southern Methodist University (1960) and have a master's degree from the same institution (1969). I am the author of 'The Great State Fair of Texas', an illustrated history which was published by Taylor Publishing Company in 1985, and this is the only book to my knowledge that encompasses the complete history of the State Fair of Texas. From my research of records I have learned that the parcel of land known as Fair Park located in Dallas, Dallas County, Texas has been and continues to be a place where a confluence of many activities occurs and where people from many cultures come together for many different purposes.

The Dallas State Fair and Exposition (later the Texas State Fair and Dallas Exposition) was first held on property now known as Fair Park in 1886. The event of the State Fair became an annual event attended by not only local citizens but visitors from neighboring counties and states. Horse racing and harness racing were presented on a one-mile track that included grandstand seating for 8,000 persons. Racing activities were cited as being one of the most popular events at the early fairs. Also well received were giant fireworks shows. In 1889 the University of Texas played a football game at the State Fair, and in 1900 polo matches were played on the racetrack infield. Over the years the Fair continued to attract many visitors and gain prominence as an exposition. Attendance topped 1,000,000 in 1916. Football stadiums were built in 1921 and again in 1930.

In 1934 Dallas won the bid from the Texas Centennial Commission to hold the Texas Centennial in 1936 at Fair Park. Many of the buildings that exist today were built for hosting the 1936 Centennial. A new racetrack and grandstand were built in 1934 in the area that is now the coliseum and adjacent parking. The Texas Centennial Exposition operated daily from June 6— November 30, 1936 and attracted 6,353,827 visitors. More than 1.2 million people attended the Cavalcade of Texas pageant held in the racetrack area nightly during those six months. The Pan American Exposition held the following year was open daily from June 12—October 31, 1937. On January 1, 1937 the first Cotton Bowl Game was played at Fair Park. More than 12,000 people attended the event. In 1941 the Cotton Bowl Stadium hosted 46,000 people for the Texas–Oklahoma football game. Beginning in 1941 Fair Park played host to the Starlight Operettas for many years in an open arena in the Park. In 1947 the Comet Roller Coaster was built as a permanent ride attraction on the Midway in Fair Park. In 1949 in the grandstand area, Joie Chitwood's automobile Thrill Show played and in 1951 there was a Thrillcade which was a show that featured motorcycles and automobiles in events that included crashing them together. In 1957, an additional 13 acres of real estate was added to Fair Park with the purchase of approximately 8 blocks of real estate facing Pennsylvania Avenue. Also in 1957, Fair Park continued to play host to 75,000 people in the Cotton Bowl for the Texas–Oklahoma football game, and in the grandstand area the Thrillcade continued to perform the various stunts involving motorcycles and automobiles. In 1959 the first major off-season booking of the National Finals Rodeo took place at Fair Park. The rodeo was held in a new coliseum that was built on the site of the old racetrack and grandstand.

In 1901 the first automobile racing occurred in Fair Park. Sunday programs featured races between two full-sized cars as well as contests between motorcycles and horses. A 100–mile automobile race was held on the Fair Park track on January 1, 1905.

In 1911 Fair Park played host to air shows for the first time. Bi planes took off and landed in the racetrack infield.

From about 1934 to about 1958 a second racetrack, with a large grandstand, existed near where the present coliseum is located and events were held in this facility includ-

ing automobile, motorcycle, and horse races. Additionally, Fair Park had events that included automobile demolition derbys and other such vehicle events.

The Cotton Bowl over the years has played host to the SMU Mustang football team, the Dallas Cowboy football team, the Dallas Texan football team and, of course, many visiting universities. In the Cotton Bowl itself there have been many and varied uses including a motorcross race and a truck and tractor pull in the spring of 1984; and several Texas Jam concerts including the years 1978, 1979, 1980; two sold out Rolling Stone concerts in 1982; the Billy Graham convention in the 1970's; a meeting to honor the United States POWs; many featured entertainers appeared in the Cotton Bowl including Elvis Presley, Charlie Pride, Louis Armstrong, Frank Sinatra, and Tennessee Ernie Ford. Fireworks shows have been presented for many years in Fair Park. Since the mid–1950s a major fireworks show has been offered each year for July 4th. This continues to be a popular event. Fireworks shows were a nightly event at the annual State Fair of Texas from approximately 1980–87.

Because of the large crowds and the attraction created by the events at Fair Park, helicoptors fly over the grounds frequently. These helicoptors may be from the Police Department, traffic control people, radio stations, television stations, and even advertising companys.

After World War II the Summer Midway was a very popular attraction in which the Comet Coaster operated and other amusement rides, games, and food operations were open during the summer months.

From 1960–1972 the Cotton Bowl annually played host to fair time events involving the Air Force military bands and Dallas Symphony Orchestra playing the 1812 Overture which involved the firing of cannons. Each evening during the annual State Fair for at least 15 years one or more cannons have been fired at a ceremony in which the flags are lowered.

Overall for more than 100 years, Fair Park has been the site for a variety of activities including racing, concerts, festivals, community gatherings, theatre events, cultural gatherings, educational meetings, livestock displays and other entertainment attractions. I have listed above only a few of the various activities. A more detailed list might be found in the book that I published that is above referenced."

/s/ Nancy Wiley
NANCY WILEY

SWORN TO AND SUBSCRIBED BEFORE ME on this 7th day of December, 1988, to which witness my hand and seal of office.

/s/ ·Risë Line
RISË LINE
Notary Public in the State of Texas

My commission expires:

11/7/92