# HMK CORPORATION

v.

# COUNTY OF CHESTERFIELD, et al.

### Civ. A. No. 84–0811–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 26, 1985.

Steven L. Micas, Jeffrey L. Mincks, Office of Co. Atty., Chesterfield, Va., County of Chesterfield.

John J. Beall, Jr., Sr. Asst. Atty. Gen., Richmond, Va., for Harold C. King.

James G. Harrison, Kevin M. McGowan, Hopewell, Va., for plaintiff.

## OPINION

WARRINER, District Judge.

By order of this Court dated 18 July 1985 the parties were requested to brief the effect, if any, that the Supreme Court's decision of *Williamson County Regional Planning Commission v. Hamilton Bank,* — U.S. ——, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), has on this Court's ability to adjudicate this 42 U.S.C. § 1983 action. The parties have briefed the issue and oral arguments were held on this matter on 7 August 1985. The matter is ripe for adjudication.

Plaintiff contends that the defendants conspired with Sigma Corporation by use of legislative and administrative processes to deny plaintiff equal protection and procedural and "substantive" due process, and that defendants have attempted to take plaintiff's property in violation of the public use clause of the Constitutions of both the Commonwealth of Virginia and the United States.

The heart of plaintiff's claim is that defendants, with Sigma Corporation, have conspired to use the State condemnation processes to take plaintiff's property for the private use of Sigma Corporation. To date the Virginia Department of Housing & Transportation has implemented quick-take procedures under Va.Code § 33.1–89 *et seq.,* to acquire a part of HMK's property. Under § 33.1–122 plaintiff has been divested of its title to the property and the Commonwealth, by way of the VDH & T, has obtained a defeasible title in that property. The Commonwealth will not gain indefeasible title to this property until condemnation procedures are completed with a favorable ruling for the Commonwealth.

In *Williamson County* the Hamilton Bank of Johnson City (Bank) owned certain property. The predecessor in interest to that property had obtained tentative approval of a preliminary plat back in 1973 for the development of that property.

In 1977, the county changed its zoning ordinance to require that calculations of allowable density include 10% of the total acreage to account for roads and utilities ... In addition, the number of allowable units was changed to one per acre from the 1.089 per acre allowed in 1973.... The Commission continued to apply the zoning ordinance and subdivision regulations in effect in 1973 to [the property in question] and reapproved the preliminary plat.

*Williamson County,* — U.S. at —— ——, 105 S.Ct. at 3111–13. In August 1979, the Commission reversed its position and determined that for all further development of the property the 1977 zoning ordinance should control. The Bank acquired the property and in 1981 submitted two revised plats for approval. The plats were disapproved for a number of reasons including failure to comply with the requirements of the 1977 zoning ordinance.

The Bank then filed an action pursuant to 42 U.S.C. § 1983 in the United States District Court. The Bank alleged that its property had been taken without just compensation in violation of the Fifth Amendment of the United States Constitution. A jury trial was held and the jury found the Bank had been "denied the economically viable use of its property in violation of the Just Compensation Clause, and that the Commission was estopped under state law from requiring respondent to comply with the current zoning ordinance and subdivision regulations rather than those in effect in 1973." *Williamson County,* — U.S. at ——, 105 S.Ct. at 3115. The jury awarded plaintiff damages of $350,000. The court then entered a permanent injunction requiring the Commission to apply the ordinances that were in effect in 1973. Later the court granted a judgment n.o.v. on the taking issue declaring that the Bank "was unable to derive economic benefit from its property on a temporary basis only, and that such a temporary deprivation, as a matter of law, cannot constitute a taking."

The circuit court held that a temporary denial of property could be a taking and

would be treated in the same manner as a permanent taking. The Supreme Court granted certiorari "to address the question whether federal, state, and local governments must pay damages to a landowner whose property allegedly has been 'taken' temporarily by the application of government regulations." *Id.* The Court never reached that question determining instead that the action was not ripe for adjudication.

■ The Fifth Amendment to the United States Constitution provides *inter alia* "nor shall private property be taken for public use, without just compensation." For that part of the Fifth Amendment to be violated there are three areas of inquiry: (1) whether there was a taking; (2) whether the taking was for a public or private use; and (3) if there was a taking for public use was just compensation paid. In *Williamson County* the only issues before the Court were whether there was a taking and if so was the taking without just compensation. The Court determined that the inquiry into both of those questions was premature and not ripe for a decision.

■ The Court, in dealing with the taking issue, noted that each of the eight objections the zoning commission relied on to deny the Bank's plat could have been resolved by the granting of variances. The Court noted that the commission itself could have granted a number of variances and the board of zoning appeals could have granted the rest. The Bank asserted that under the Supreme Court's decision in *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), plaintiffs in a § 1983 action are not required to exhaust administrative remedies. The Supreme Court distinguished *Patsy* from the case at bar by finding that exhaustion of administrative remedies "is conceptually distinct, ... from the question of whether an administrative action must be final before it is judicially reviewable." *Williamson County,* — U.S. at —, 105 S.Ct. at 3119. The Court stated that:

> the finality requirement is concerned with whether the initial decision-maker

has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

The Court distinguished exhaustion of administrative remedies from the finality issue. The Court explained that:

> [t]he difference is best illustrated by comparing the procedure for seeking a variance with the procedures that, under *Patsy,* respondent would not be required to exhaust. While it appears that the State provides procedures by which an aggrieved property owner may seek a declaratory judgment regarding the validity of zoning and planning actions taken by authorities, ... [citations omitted], respondent would not be required to resort to those procedures before bringing its § 1983 action, because those procedures are clearly remedial. Similarly, [the Bank] would not be required to appeal the Commission's rejection of the preliminary plat to the Board of Zoning Appeals, because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decision-making.

*Id.* at — - —, 105 S.Ct. at 3119–21. Ultimately the Court determined as to the taking that, because the Bank had not availed itself of procedure for obtaining variances, the commission did "not conclusively determine whether [the Bank] will be denied all reasonable beneficial use of this property, and therefore is not a final, reviewable decision." *Id.* at —, 105 S.Ct. at 3121.

Neither side contends that when the VDH & T employed the quick-take procedure that there was not a taking. However, as I view the quick-take procedures, in light of the variance procedures in *Williamson County,* it appears quite likely that the taking which vests the VDH & T with a defeasible fee is not a final taking in

the sense discussed in *Williamson County.* It appears that until the Circuit Court grants a fee simple title to the VDH & T, as provided in § 33.1–129, the question presented to me is not ripe.

Even assuming that there has been a taking, the Supreme Court's analysis in *Williamson* concerning the Just Compensation Clause would compel this Court to determine that the matter before it is not ripe for adjudication. As the court noted in *Williamson* "[B]ecause the Fifth Amendment prescribes takings *without just compensation*, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." *Williamson Planning Commission,* —— U.S. at —— n. 13, 105 S.Ct. at 3121 n. 13. The Court noted that Tennessee courts have interpreted the Tennessee Code to allow recovery by instituting inverse condemnation procedures when restrictive laws or regulations affect a taking and that the Bank had not instituted such proceedings. The Court stated "if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the just compensation clause until it has used the procedure and been denied just compensation." *Id.* at ——, 105 S.Ct. at 3121.

The Court in reaching its determination analogized the taking in the inverse condemnation procedures to the procedures discussed in *Parratt v. Taylor,* 451 U.S. 527, 529, 101 S.Ct. 1908, 1910, 68 L.Ed.2d 420 (1981). In *Parratt* the Court had held:

> that a person deprived of property through a random and unauthorized act by a state employee does not state a claim under the Due Process Clause merely by alleging the deprivation of property. In such a situation, the Constitution does not require predeprivation process because it would be impossible or impracticable to provide a meaningful hearing before the deprivation. Instead, the Constitution is satisfied by the provi-

sion of meaningful postdeprivation process. Thus, the State's action is not "complete" in the sense causing a constitutional injury "unless or until the State fails to provide an adequate postdeprivation remedy for the property loss."

*Williamson County* (quoting *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, n. 12, 82 L.Ed.2d 393 (1984)). The Court ultimately held that there was no denial of just compensation because the Bank did not show "that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature." —— U.S. at ——, 105 S.Ct. at 3121. The fact that the actions of Williamson County were not "random and unauthorized" did not deter the Court from noting the analogy between *Parratt* and *Williamson County.*

While *Williamson County* only dealt with the taking and the just compensation clauses the import of the decision is equally applicable when dealing with the third part of the taking clause—the private versus public use clause. Whether the State condemnation procedures considered in light of the quick-take action by the VDH & T would be considered a pre- or post-deprivation hearing, it is undisputed that there are available adequate State procedures in place to determine whether HMK's property is being taken for a public or a private use. Accordingly, until such time as the State court determines through the available condemnation procedures the public/private use issue, the matter is not ripe in this Court for a determination of § 1983 action.

■ Plaintiff contends that there are no adequate provisions in State court to award damages to it if, in fact, there was a conspiracy to deprive plaintiff of its property. If it is determined that the property was taken for public use it will be afforded just compensation for that taking. Any other damages they suffer are only those damages that occur as a part of living and doing business in a civilized society. As Justice Stevens noted in his concurring opinion in *Williamson County,*

Every time a property owner is successful, in whole or in part, in a challenge to a governmental regulation—whether it be a zoning ordinance, health regulation, or traffic law—he is almost certain to suffer some temporary harm in the process. At the least he will usually incur significant litigation expenses and frequently he will incur substantial revenue losses because the use of his property has been temporarily curtailed while the dispute is being resolved.... [There is no] utopian requirement that [an] enforcement action may not impose any cost upon the citizen unless the Government's position is completely vindicated.

*Id.* at ——— ———, 105 S.Ct. at 3124–27 (Stevens, Jr., concurring). Accordingly, any additional costs to plaintiff are those costs incurred in living in a civilized society and are not compensable.

■ I have carefully considered under the *Williamson* analysis whether to dismiss or to stay a federal action that is not ripe. If I were simply to stay the matter and it were never ripe, *i.e.*, if the defeasible title of the Commonwealth was divested so that plaintiff will not have suffered by taking for private use, then neither plaintiff nor defendant would have any interest (other than courtesy) to advise this Court that the matter has been resolved. Without such notice from the parties, the unripe fruit having fallen from the bough, the action would linger until removed by this Court for failure to prosecute. Moreover, the "*Williamson County* finality doctrine" is an area of the law with which I am unfamiliar, as are counsel in this case, and as I have admitted from the bench, *Williamson* is or may be a puzzle to me. Accordingly, I would suggest my interpretation of the *Williamson County* application to this case is ripe for an appeal. A stay would not afford the party the ability to resolve the issue by prompt appeal. Dismissal would. For these reasons it is my decision to dismiss without prejudice. An appropriate judgment shall issue.

And it is so ORDERED.